IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                    :

  Gabriel G. Atamian, MD,MSEE,JD          :        Chapter 7

    Debtor,                             :        Case No.  05-20040-MFW

Last four digits of Social Security       :
No.  5733                                 :
_____ :

Gabriel G. Atamian,MD,MSEE,JD,            :

    Plaintiff,                          :        Adversary No. 06-50435 (MFW)

v.                                        :

U.S. Department of Education; and,        :
Secretary of U.S. Department of
Education,and Signet Bank,                :

  Defendants.                             :
_____

DESIGNATION OF THE ITEMS TO INCLUDE IN THE RECORD OF APPEAL

COMES NOW Plaintiff/Appellant pursuant to Rule 8006 of the Federal

Bankruptcy Rule, designates of the items to include in the record

of Appeal, as follows:

1.   Motion by the United States for Summary Judgment and Memorandum
    in Support Thereofg (Docket No 76)

2.   Objection to the Defendant's Motion for Summary Judgment (Docket
    No 77)

3.   Reply to Debtor's Objection to the Defendant 's Motion for
    Summary Judgment (Docket No 78)

4.   Motion for the Need of Referral of this Case to the United States
    Justice Department for Investigation (Docket No 80)

5.   Objection to Plaintiff's Motion for the Need of Referral of
    this case to the United States Justice Department for investi-
    gation and Objection to Debtor Setting a Hearing in violation
    of local Rule (Docket No  81)

6. Memorandum Opinion GRANTING US Department of Education's Motion for Summary Judgment (Docket No 83)

7. Order GRANTING US Department of Education's Motion for Summary Judgment (Docket 84)

8. Notice of Appeal of the plaintiff/appellant.

Resptfully submitted,

*Gabriel G. Atamian, MD, MSEE, JD*

Gabriel G. Atamian,MD,MSEE,JD
1021 N. State Street Apt A
Dover, DE 19901
302-678-2546
Plaintiff/Appellant. Pro se

May 25, 2007

PROOF OF SERVICE

I, Gabriel G. Atamian,MD,MSEE,JD, do hereby certify that a copy of

Appellant's Designation of the Items to include in the Record

of Appeal, was served on May 25, 2007, fisrt class mail, postage

paid, on:


Ellen W. Slights
US Attorney's Office
1007 Orange Street
Suite 700        , PO Box 2046
Wilmington, DE DE 19899


I declare under penalty of perjury that the above is correct and true.


                                    _Gabriel G. Atamian, MD, MSEE,_
                                    Gabriel G. Atamian, MD,MSEE,JD   JD

May 25, 2007

1.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re                       :

Gabriel G. Atamian MD,MSEE,JD,    :     Case No. 05-20040 (MFW)

          Debtor.          :

_____ :

Gabriel G. Atamian MD,MSEE,JD,    :

          Plaintiff,        :

   v.                       :     Adv. Pro. No. 06-50435 (MFW)

U.S. Department of Education, and   :
Secretary of U.S. Department of Education, :
and Signet Bank,             :

          Defendants.     :

## MOTION BY THE UNITED STATES FOR SUMMARY JUDGMENT
## AND MEMORANDUM IN SUPPORT THEREOF

COMES NOW the United States, on behalf of its Department of Education (DOE), by

and through the undersigned United States Attorney, and respectfully requests this Court,

pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), made applicable to this

adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, grant the

Motion by the United States for Summary Judgment ("Motion"). In support of the Motion, the

DOE avers as follows:

    1.   On or about July 3, 1989, the Plaintiff executed a promissory note to secure a loan of

$7,500 (Debt No. G200509000297001), on or about March 15, 1988, the Plaintiff executed a

promissory note to secure a loan of $5,000 (Debt No. G200509000297102), on or about

September 1, 1988, the Plaintiff executed a promissory note to secure a loan in the amount of

$7,500 (Loan No. G200509000297203) and on or about April 14, 1986, the Plaintiff executed a

promissory note to secure a loan in the amount of $2,500 (G200509000297304) (collectively,

"USA Loans").  All of the USA Loans accrued interest in the amount of 8% per annum. These

USA Loans were guaranteed by USA FUNDS and then reinsured by the DOE under loan

guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as

amended, 20 U.S.C. 1071 et seq. (34 C.F.R., Part 682).  On October 14, 2004, the USA Loans

were assigned to the DOE.

2.    On or about February 7, 1990, the Plaintiff executed a promissory note to secure a

loan of $3,000 (Debt No. N200404007938401) from John Hopkins University at 5% interest per

annum ("Perkins Loan").  The institution made the loan under the federally funded National

Direct Student Loan, now Perkins Student Loan, programs authorized under Title IV-E of the

Higher Education Act of 1965, as amended, 20 U.S.C. Section 1087 aa et seq. (34 C.F.R. Part

674).  The Perkins Loan was assigned to the DOE on August 25, 1995.

3.    On January 20, 2006, Debtor initiated this adversary proceeding by filing the

Complaint of Debtor, Gabriel G. Atamian, to Determine Dischargeability of Student Loan which

was later amended to add DOE as a party ("Complaint"), seeking: (1) a determination that the

USA Loans and Perkins Loan (collectively, "Loans") were dischargeable; and (2) alleging,

among other things, that as a result of a Jewish conspiracy, the Debtor's mother was murdered

and the Debtor received make believe dental treatment ("Residual Claims").  The Residual

Claims were not asserted against the DOE and relief as to such claims is not obtainable from the

DOE.  (Attachment A).

2

4.    On August 24, 2006, the DOE filed an answer to the Complaint.

5.    After due investigation, the DOE concluded that Debtor was entitled to an undue hardship discharge of the Loans pursuant to 11 U.S.C. Section 523(a)(8).  As a result, on December 29, 2006, the DOE discharged the debt of the Debtor with respect to the Loans. (Attachment B and Attachment C).

## LEGAL MEMORANDUM

Pursuant to the Federal Rules of Civil Procedure, a court will grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.CivP.56©.  Facts that could alter the outcome are material.  Horowitz v. Fed Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).  In applying this standard, the court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, Plaintiff must present some evidence, more than a scintilla, enough that a jury could reasonably find for Plaintiff.  Id.; Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005).

In this case there is no genuine dispute of material fact and the DOE is entitled to summary judgment as a matter of law on the basis of the undisputed facts.  On December 29, 2006, the DOE voluntarily agreed to provide the relief the Debtor was seeking by

3

administratively discharging the Debtor's obligations on the Loans. Despite this administrative

discharge, the Debtor announced his intention to pursue the Residual Claims, including to "find

out the murder of the beloved mother of Debtor which is nicely covered up by the jewish

physicians" and "to have discovery and documentary evidence that since 1979, because of jewish

conspiracy, Debtors dental conditions are not treated and Debtor needlessly spending money on

sham and make-believe treatment by the dentists." (P.18 of First Amended Complaint).

     The administrative discharge of the Loans eliminated the only claim over which this

Court had jurisdiction. 28 U.S.C. Section 157 confers jurisdiction on the bankruptcy court.

Generally, there are four types of matters under title 11 of the bankruptcy code over which the

bankruptcy court has jurisdiction: "(1) cases 'under' title 11; (2) proceedings 'arising under' title

11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under

title 11." Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006) (citing In re Combustion

Engineering, Inc., 391 F.3d 190, 225 (3d Cir. 2005).

     The Debtor's Residual Claims do not meet any of the requirements for bankruptcy court

jurisdiction. The first subcategory of finding jurisdiction "under" Title 11 "refers merely to the

bankruptcy petition itself." The Residual Claims are not part of the bankruptcy petition and thus

do not fall into the first subcategory of jurisdiction. Stoe, 436 F.3d at 216. The Residual Claims

also fail to satisfy the "arising under" jurisdiction criteria, since they do not invoke a "substantive

right provided by title 11." In re Resorts Int'l, Inc., 372 F.3d 154, 162-163 (3d Cir. 2004) (citing

In re Guild and Gallery Plus, 72 F.3d 1171 (3d Cir.1996)). "Arising under" jurisdiction

"includes such things as administrative matters, orders to turn over property of the estate and

determinations of the validity, extent, or priority of liens," and the allegations of murder and

4

dental problems comprising the Residual Claims simply do not fall within this jurisdictional category. Stoe, 436 F.3d at 216 (quoting Collier on Bankruptcy Section 3.01(4)(c)(I) at 3-21-22 (15th Rev. Ed. 2005). The Residual Claims also do not invoke "arising in" jurisdiction. If a proceeding has no existence outside of the bankruptcy case, it "arises in" a bankruptcy case. Id. The Residual Claims of murder and dental problems exist outside of the bankruptcy case and therefore do not qualify as matters "arising in" the bankruptcy petition. United States Trustee v. Gryphon at Stone Mansion, Inc., 166 F.3d 552, 556 (3d Cir. 1999).

To fall within the court's jurisdiction as claims 'related to' the bankruptcy filing, the claims must be of a sort that "could conceivably have any effect on the estate being administered in bankruptcy." Bobroff v. Continental Bank (In re Bobroff), 766 F.2d 797, 802 (3d Cir. 1985) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d.cir. 1984). Claims are "related to" bankruptcy if the outcome would alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Pacor, 743 F.2d at 994. See also, In re Federal Mogul Global, 300 F.3d 368, 381 (3d Cir. 2002). The impact of such claims on the estate must bear directly on the bankrupt's estate and not require "the intervention of yet another lawsuit" to have an impact on the estate. Id. At 382. None of the Residual Claims impact upon the handling or the administration of the bankrupt estate. Thus, the Bankruptcy Court has no jurisdiction over the Residual Claims.

Even assuming that the Court could exercise its jurisdiction, the Debtor's claims still fail. In the instant case, this Court is constrained to construe the complaint of pro se plaintiffs liberally. Bardsley v. Judge Marjorie C. Lawrence, Court of Common Pleas of Montgomery

County, 956 F. Supp. 570, 572 (E.D. Pa), aff'd, 124 F.3d 185 (3d Cir. 1997); see also, e.g., Zilich

v. Luch, 981 F.2d 694, 694 (3d Cir. 1992).  Nonetheless, even taking all allegations as true and

interpreting the Complaint liberally, there is no set of facts which, if proven, would entitle the

Debtor to the relief he requests.  The Federal Rules of Bankruptcy Procedure provide that "a

debtor or any creditor may file a complaint to obtain a determination of the dischargeability of

any debt".  Fed. R. Bankr. P. 4007(a).  The DOE effected an administrative discharge of the

Loans on December 29, 2006.  The Debtor is no longer a debtor of the DOE.  Since the debt has

been extinguished, there is no longer a debt to discharge or be sued upon.  The Residual Claims

that the Debtor is asserting are not against the DOE and no relief is obtainable from the DOE on

account of such claims.  Thus, there is no issue of material fact relating to the existence of a debt

owing from the Debtor to the DOE and the DOE is entitled to judgment as a matter of law.

      WHEREFORE, for the reason stated and upon the authorities cited herein, the DOE

respectfully requests this Court to grant summary judgment in its favor.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By:

Ellen W. Slights
Assistant United States Attorney
Delaware Bar I.D. No. 2782

February 9, 2007

6

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:  Gabriel G. Atamian,MD,MSEE,JD                  :

      Debtor                                          :

_____                           :  Chapter

            Plaintiff,                    :  Case No. 02-20040-MFW

v.                                                     :

U.S. Department of Education; and                      :
Secretary of U.S. Department of Education;

Johns Hopkins University; and,                         :  Adv. Proc. No. 06-50435-MFW

Signet Bank,

         Defendants.                           Hearing date  July 26, 2006 at 2:0

_____

FIRST AMENDED COMPLAINT

COMES NOW plaintiff Gabriel Atamian,MD,MSEE,JD, and moves the

Court pursuant to the Court's decision and Order, during  the

hearing , on June 2, 2006, permitting plaintiff to amend his

complaint for the first time.

The amendment consit only by substituting the defendant "National

Payment Center" to "U.S. Department of Education; and,Secretary of

U.S. Department of Educational."

    The amendment is  no way prejudicial to the defendants.

    Attached hereto as Exhibit A, is the first Amended Complaint.

                    Respectfully submitted,

                    _Gabriel G. Atamian, MD, MSEE,JD_

                    Gabriel G. Atamian,MD,MSEE,JD
                    1021 N. State Street Apt A
                    Dover, DE 19901
                    302-678-2546
                    Plaintiff. Pro se

June 9, 2006

**Attachment A**

Exhibit A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In Re:  Gabriel G. Atamian,MD,MSEE,JD                    :

Debtor                                            :

_____                       :  Chapter 7

                    Plaintiff,                          :  Case No.  05-20040-MFW

v.                                                     :

U.S. Department of Education; and                      :
Secretary of U.S. Department of Education;

Johns Hopkins University; and,                         :  Adv. Proc. No.  06-50435-MFW

Signet Bank,

                    Defendants.                        Hearing date   July 26, 2006 at 2:0
_____

FIRST AMENDED COMPLAINT

COMPLAINT TO DETERMINE DISCHARGEABILTY OF STUDENT LOAN

1.  Debtor filed this case under Chapter 7 of the Bankruptcy Code
on November 15, 2005. This Court has jurisdiction over the action
under 28 USC § 1334. This proceeding is a core proceeding.

2.  The unsecured debts owing by the Debtor and listed on Schedule F-
Creditors Holding Unsecured Nonpriority Claims - is a student loan
owing to :  i. National Payment Center;
           ii. Johns Hopkins University;
           iii. Signet Bank.( not listed on Schedule F)

3.  These loans were incurred to pay expenses at Johns Hopkins Univer-
sity.

4.  Based on the Debtor's current income and expenses , the Debtor
cannot maintain a minimal living standard and repay the loan. Debtor
is a retired 70 years indigent who lives on social security benefits
and also on food stamps. Moreover, see, jewish conspiracy which
is well illustrated in the Complaint, pp 3-18 , infra.

5.  The Debtor's current financial condition is likely to continue for a significant portion of the repayment period of the loan. Debtor is a 70 years retired indigent person who lives on food stamps and medicaid. Moreover, jewish conspiracy of taking Debtor for an "Arab", has ruined the entire life of the Debtor since 1965, see infra, of this Complaint, pp. 3-18.

6.  The Debtor have made a good-faith effort to repay his debt as follows:  Debtor introduces two Appendixes which will prove that the jewish conspiracy for taking Debtor for an "Arab" has prevented Debtor to be employed since 1982. Appendix I, which is the genesis of the conspiracy by the jewish physicians since 1965. The Appendix II, is the curriculum vitae of the Debtor which reveals that the Debtor has earned 10 advanced degrees.

   The genesis of the conspiracy by the jewish physicians is a pertinent evidence to the Bankruptcy Court due the fact that Debtor was not able to earn any income since 1982, even though he does posses 10 advanced degrees.( See Appendix I, A-72)

7.  The Debtor has filed for bankruptcy for reasons other than just discharge his student loan. Such as, pursuant to Section 1109(b) Bankruptcy Code, Debtor may raise and may appear and be heard on any issue in a case under this chapter. (see Bankruptcy Rule 7024 Intervention by the Court to designate a Christian Master to find out why the Debtor has not been able to earn an income since 1982, due to the jewish conspiracy. Moreover, to find out that since 1979, Debtor's dental conditions are not treated, Debtor is in constant pain because of swollen gums due make-believe treatments of his dental problems.

## COMMON LAW CONSPIRACY

Plaintiff will describe in a chronological sequence and proof that the jewish physicians from NYC , since 1965, have taken plaintiff for an "Arab" and have destroyed plaintiff's entire life.

**CHRONOLOGICAL EVENTS AND FACTS OF CONSPIRACY AGAINST PLAINTIFF BY THE NYC JEWISH PHYSICIAN FROM 1965 until today**

I.  Labeling by Dr. Naftalin , on 1965.

One month before my graduation from the medical school, on 1965, Dr. Naftalin who survived the German Concentration Camp,(A-7)[1][2]

---

(1)   Attached hereto is Appendix I which contains the genesis of the conspiracy of the jewish physicians against Plaintiff since 1965

(2)   Also, attached hereto as Curriculum Vitae of Gabriel G. Atamian,MD,MSEE,JD

3

who was a psychiatrist in the medical school, coined plaintiff with the label of:"Bizarre behavior, emotionality and need of psychothe-rapy."

It is very important to note that Dr. Naftalin did not know me at all. Plaintiff has never met Dr. Naftalin .

Furthermore, in order to be graduated from New York Medical College, on 1965, plaintiff was send to the Immigration and Natura-lization Department , to denounce his Syrian citizenship and acqui-re the status of Stateless. Plaintiff not being an "Arab", did not mind at all to be a Stateless individual. So, plaintiff did procu-re his green card before graduation in order to be graduated from the medical school.

II.   FROM 1969 to 1979, WHEN PLAINTIFF WAS IN NEW YORK CITY

On March 28, 1969, my beloved brother was killed on the Highway of Massachussetts, while plaintiff and his brother were fixing their parked car.

A jew from NYC , hit our parked car, and my brother was muti lated in that so called "Unfortunate coiencidence".

From 1970 until 1979 , plaintiff was drifted to NYC.

Jewish Physicians made a fictitious diagnosis of Lou Gueric Disease on plaintiff, on 1971. Plaintiff was literally on the Death Row, for 7½ years, because Lou Gueric Disease is a fatal disease. The above facts are clearly described in letter send to the Board of Medicine of Virginia, on June 1, 1985. (See A-7 and A-8)

4

III.   From 1979 until 1985 . THE PERIOD WHERE PLAINTIFF APPLIED
FOR LICENCE TO PRACTICE MEDICINE IN ARIZONA, DISTRICT OF COLUMBIA
AND VIRGINIA.

On June 1979, plaintiff left NYC and went to Arizona. The
Board of Medical Examiners in Arizona ordered a physical examina-
tion and a mental examination for the plaintiff, after having re-
ceived the record from Manhattan State Hospitalfor the plaintiff.

It is very ironical for the plaintiff, when the Manhattan
State Psychiatric Hospital, grants a Diploma with Honors in Psychia-
try to the plaintiff after successfully finishing the psychiatry
residency , and, and then turns around through 'unlawful act' sends
an untruthful record to the Board of Medical Examiners of Arizona,
about plaintiff. The above act, by the jewish physician from NYC,
is an overt act of conspiracy.

The same tactic happened in the District of Columbia, on
1980-81, while the plaintiff was an instructor of Physical Medicine
at Howard University Medical Center, the Department did require
for a license to practice medicine in the district of Columbia.

The plaintiff applied for the license in the district of Colum-
bia. The Board of Medical Examiners after numerous correspondance
with the State of New york, did order the plaintiff to take a
mental examination.

The same routine happened with the Board of Medical Exami-
ners of Virginia, 1985, where the Board in an informal meeting,
ordered physical and mental examination of the plaintiff. This time,
plaintiff was  aware of the conspiracy, therefore choose to surren-
der his medical license to the Board of Medical Examiners of Vir-
ginia, by his own volition, in other words, voluntarily. (See A-7 to
A-10)

Couple days later, after plaintiff's voluntary surrender of license, plaintiff receives a letter from New York State Licensure Department, Albany, NY. Plaintiff contacted by telephone to the sender of the letter who told plaintiff that:" Plaintiff has a license in medicine for life in New York, and plaintiff should return back to New York."

In summary, all the above orders of the mental examination of plaintiff issued by the Boards of Medical Examiners for licensure of the States of Arizona, District of Columbia and Virginia , were orchestrated by the jewish physicians from the Manhattan State Hospital of the State of New York, by forwarding to the Boards untruthful record or fabricated reco rd about the plaintiff.[3]

Attached hereto is the Diploma with Honors in Psychiatry accorded to plaintiff, with special comments by Edward J. Hornick,MD, Chief of Psychiatry. (See A-73 and A-74).

_____

[3] In the procurement of a license to practice medicine in any state, the custom or the procedure is to inquire information about the applicant from the state that the applicant was practicing medicine , before leaving that state.

6

**IV.    FROM 1981 to 1995, PLAINTIFF HAS SEEN Dr. DuPONT ,**
**A SPECIALIST IN BEHAVIORAL MODIFICATION MEDICINE.**

Plaintiff went to Dr. DuPont [4]                    , on November 1981, for

his phobia and the consequences of phobia of not being able to per-

form well sexually.

From 1981 until 1985, Dr. DuPont has not kept a record

about plaintiff. But, since 1985, it is very strange , that after

the voluntary surrender of plaintiff's license of medicine,  Dr.

DuPont has kept an extensive record( including colateral records

which has nothing to do with plaintiff's phobia). Dr. DuPont has

acted as a private investigator (detective) rather than a psychia-

trist.

Dr. DuPont's record can be contrued has follows:

a. from 1981 to 1985, no record kept.
b. from 1985 to 1987, an extensive record about plaintiff is made by Dr.
DuPont. This period was when plaintiff voluntary surreder his license
and attended Maryland University for electrical engineering.
c. From 1987 to 1995, an extensive record is made, this was the period
of the cover-up of my beloved mother's murder . Dr. DuPont has tried
very hard to make plaintiff crazy (paranoid).

On August 7, 1998, plaintiff has learned through discovery,

for the first time, plaintiff has become aware and informed about

the content of Dr. DuPont's record about plaintiff.

a.   Note of Dr. DuPont on 8-9-85(See A-11)

My  name is mis-spelled: Gabrial Atamanian

the note states:

"He not practice medicine or seek to get his license back"

_____

(4) Dr. DuPont is not a member of the famous family in Delaware, known
as duPont.

b. Note of Dr. DuPont on 6-28-85 (A-12)

My name is mis-spelled : Ataminian.
The not states;
" I also suggest  he not pursue his license in DC but that he
focus on non-clinical activities.."

c. Note of Dr. DuPont on 4-8-86 (A-13)

My name is mis-spelled: Gabrial, Atamanian.
The note states:
" I said I thought it was fine as long as he played a technical role,
not the role of the clinically repsonsible phycisiian."

It should be noted that the Notes (a), (b) and (c) , are before my beloved mother's
murder by the jewish physician on 6-1-87.

d. Note of Dr. DuPont on 8-20-87 (A-15)

" In   charge of patient relations for Adventist hospital
Said Dr. Atamian is "obviously parnaoid" and often disruptive but
that he responds to their being firm with him.
Concerned about the impact on him of the probable death of his
mother."

It is , also, very important to note that in the progress

note of plaintiff's beloved mother at Washington Adventist Hospi-

tal, on 6-19-87,the medical social worker, States (See A-14):

" Unit staff states son has Dx Schizophrenia.... receiving psychiatric
follow up."

e. Note of Dr. DuPont on 9-4-87 (A-16)

The note states:
" I spoke last night and this afternoon at lenght toAgt Vermillion
of the Secret service. Office 634-5100 and home 703-620-4773. He was
supportive but indicated Dr. A was not committable in his view."

Again, Dr. DuPont wanted to make me crazy(involuntary
committable), but the Secret service indicated that Dr. Atamian
was quite appropriately with them, and was not committable in
his view.

f. Note of Dr. DuPont on 1-14-90 (A-18)

The note states:
" but I told her I doubted he could get a state license in
 California, or in any state."

8

g.  Note of Dr. DuPont on 7-12-91 (A-19)

Again my name is mis-spelled: Gabrael, Gargiel. (5)

The note states:

" I told her I did not think he could get a license anywhere to practice medicine."

From (a) to (g), Dr. DuPont states that plaintiff cannot practice medicine. However, please see note (h), infra.

h. Note of Dr. DuPont on 1-21-92 (A-20)

This is an interesting note which states:

" I proposed that we work to get his Maryland medi al licnseback noting he'd have to drop public expressions of his antisemitism and have diagnosis of paranoia (hot phobia)

Suddenly, Dr. DuPont somehow or rather has changed his opinion , and states that plaintiff can have a license and can do clinical work. From (a) to (g) , Dr. DuPont has emphatically stated that plaintiff cannot and should not practice medicine.

Moreover, it is very interesting to notice, that Dr. DuPont is selling plaintiff the diagnosis of paranoia. Or, in a subtle manner, Dr. DuPont is forcing plaintiff to accept the diagnosis of paranoia.

Plaintiff, having a psychiatry Diploma with Honors, is suprised to see and witness such a  nonprofessional conduct.

It is , also, very important to note that Dr. DuPont's note on 8-31-89(See A-17), the Dx is: DSM-III 300.02, which is chronic anxiety. Dr. DuPont in the entire encounter with the plain-tiff never ever mentioned to plaintiff that plaintiff's Dx is paranoia.

(5) It is very important to note that from the voluminous record of Dr. DuPont, in each note or approximately in each note Dr. DuPont has mis-spelled plaintiff name. Plaintiff, being himself a psychiatrist believes this is an unconcious resentment against plaintiff .

9

### V. THE GENESIS OF THE CONSPIRACY AGAINST PLAINTIFF BY THE JEWISH PHYSICIANS FROM NEW YORK CITY.

Plaintiff in the Appendix A-66 to A-71, has illustrated the genesis of the conspiracy against him by the jewish physician from new york city.

Plaintiff descibes on p. A-66, how plaintiff's parents who were Armenians from Turkey, who after the massacre by the turks in 1914, plaintiff's parents immigrated to Syria. And , how his mother was raised in an orphanage in Syria by the American Protestant Missionary. The Americans came to Syria for the purpose of caring the Armenian victims of the massacre.

Plaintiff describes that when on March 19, 1956, plaintiff came to America as a student with a syrian passport. Where, during plaintiff's training in the medical school, that plaintiff was discriminated by the Jewish Physicians. They knew about my Syrian background(Citizenship). (See A-66)

Plaintiff illustrates on p. A-67, that his entire earnings from 1956 until 1999, where it reveals that plaintiff was not able to earn an income since he left New York City on 1979.

Plaintiff descibes on p. A-67, that couple days later, after plaintiff's voluntary surrender of license, plaintiff receives a letter from New York State Licensure Department, Albany, NY. Plaintiff contacted with telephone to the sender of the above letter who told plaintiff that:" Plaintiff has a license in medicine for life in New York, and that plaintiff should return back to New Yok."

10

VI.  ON JUNE 1, 1987, PLAINTIFF'S BELOVED MOTHER WAS MURDERED
     AT WASHINGTON ADVENTIST HOSPITAL BY A JEWISH PHYSICIAN.

Plaintiff has described, the following:

a. A-21 to A-34, in a lay person terms, the murder of his beloved mother.
b. A-35 to A-56, in somewhat medical terms , the murder of his beloved
mother.
c. A-57 to A-65, plaintiff has described the spoilage of his mother
medical record.

Plaintiff is adding the following citations from the medical
literature :

i.  A PHYSICIAN NEVER USES 37.5 mg  OF CAPTOPRIL ON AN ELDERLY
    WOMAN OF 80 YEARS WITH CONGESTIVE HEART FAIRLURE AND DIURETICS
    AND NITROPASTE ON BOARD.

1. The Report of the Joint National Committee on Detection , Evaluation,
and Treatment of High Blood Pressure, Arch. Intern. Med.- Vol. 148,
May 1988, on p.1034, states (See A85 and A-86):

    " elderly Patients

    ACE inhibitors( meaning captopril) are useful as
    monotherapy in elderly patients."

2. Reid Jl, Angiotensin converting enzyme inhibitors in the elderly,
British Medical Journal, Vol. 295, 17 Oct. 1987, states on p. 943 and
p. 944 ( See A-87 and ana A-88):

    " Hypotension is most often seen in patients also taking
    diuretics or in those who are hypovolemic or hyponatraemic.
    Hypotension is more common in patients with cardiac failure."

    "In patients with heart Tailure who are taking diuretics
    it is rarely practcable to stop diuretics. If they cannot be
    stopped Then reducing the dose for 24-28 hours before giving
    the angiotensin converting inhibitor may be prudent.........
    Alternatively captopril 6.25 mg may be preffered because of its
    shorter duration.

Again, it should bve be noted that the dosage to start is 6.25 mg and not 37.5 mg which

is 6 times the dosage. And, the diuretics which in this case

is lasix should have been stopped, and not prescribed by Dr. Bass,

because my beloved mother had already received on May 31, 1987,

120 mg of lasix that day. (See A-40 and A-43)

11

3. <u>In Primary care of the Elderly : A practical approach</u>, states(See A-89):

> "Hence meddlesome attempts at blood pressure reduction
> may seriously threaten cerebral blood flow and decision
> to employ hypotensive therapy in person over 75 must be
> taken with extreme caution."

> "If an 80-year-old female with such symptoms is found
> to have a blood pressure of 180/100, it is most improbable
> that lowering it to 150/90 will make her more stable and,
> indeed, if postural hypotension is thereby induced, her bal-
> ance may be made much worse."

ii. WHERE PATIENT BLOODGASES INDICATES THAT AT 2l/min flow of Oxygen,
P O2 is 74 and  P CO2 is 79, the flow of Oxygen should be and must
be decreased from 2 L/min. to 1 L/min, in order to prevent catastro-
phic and tragic outcome of respiratory arrest.

Citing the medical literature:

Wilkins E W, et al., <u>MGH Textbook of EMERGENCY MEDICINE</u>, second edition,
p. 173, states (A-90 and A -91) :

> "In clinical practice, the point at which severe hypoventila-
> tion limits oxygen therapy is highly variable and requires
> a cautious trial-and-error approach monitored by arterial
> blood-gas determinations 15-20 minutes after each adjustment
> in oxygen flow."

Yet, Dr. Bass choose knowingly and deliberately to
prescribe 2 L/min. of Oxygen for 8 hours until respiratory
arrest occured to my mother. (See A-58)

Also, see A-23, A-35, A-36, A-57 and A-58 for the delibera-
te induction of respiratory arrest on my beloved mother.

iii. DELIBERATE INDUCTION OF HYPERKILIMIA ON MY
MOTHER.

EKG on 6-1-87, at 07:00 indicates the effect of capto-
pril on serum potassium level.

The strip #5 (See A-44 and A-56) indicates hyperkalemia
meaning serumpotassium level higher than 6.5 mEq/L. ( normal
serum potassium level is 5 mEq/L). For this discussion see , also,
A-42 to A-44).

iv.    Unnecessary therapy of aminophyline I.V. to my mother
       an 80 years old woman with right sided heart failure

My mother did not have wheezing, then why treat with
aminophylline I.V. which is a bronchodialator? (See A-45 and A-46)

Dr. Bass in his physical examination , writes:" ......
elderly woman lying comfortably in bed.........................
CHEST: No definite wheezing." (See A-47 and A-48)

ALL THE ABOVE FACTS, INDICATES THAT PLAINTIFF'S BELOVED
MOTHER WAS MUTILATED ON JUNE 1, 1987.

ALSO, IT IS VERY IMPORTANT TO NOTE THAT ON OR ABOUT 1991,
PLAINTIFF COMMUNICATED BY LETTER WITH Vincent DeQUATTRO,MD, WHO
IS MEMBER OF THE 1988 REPORT OF THE JOINT NATIONAL COMMITTEE ON
DETECTION, EVALUATION, AND TREATMENT OF HIGH BLOOD PRESSURE. (
See A-85). Dr. DeQUATTRO, WROTE TO PLAINTIFF, AND STATED:

'"IS YOUR MOTHER STILL ALIVE."

13

VII.  Dr. ROBERT A. GORKIN(JEWISH PHYSICIAN) , LABELLED PLAINTIFF
AN ANTISOCIAL CHARACTER DISORDER, MEANING A PSYCHOPATH.

Dr. Gorkin's psychiatric evaluation (See A-83 and A-84),
is an unconsented and fictitious psychiatric evaluation.

On October 12, 1995, plaintiff was hospitalized at Kent
General Hospital for an acute        . stomach ulcer blee-
ding.

On October 13, 1995, Dr. Gorkin came to plaintiff to perform
a psychiatric evaluation. Plaintiff told Dr. Gorkin to 'leave plain-
tiff alone' and that plaintiff does not need Dr. Gorkin's services.

Dr. Gorkin's contact with plaintiff was only couple minutes.

Yet, Dr. Gorkin without having conducted a psychiatric
examination and interview , without having knowledge of plaintiff's
symptoms or chief complaint, without having knowledge of plaintiff's
social history and past history, and without having knowledge of
plaintiff's problems and without knowing 'anything' about plaintiff,
has written a complete psychiatric evaluation about plaintiff,
Dr. Gorkin' s diagnosis about plaintiff is antisocial character
disorder(psychopath or sociopath). Again, needless to emphasis,
that the contact of Dr. Gorkin with plaintiff was only approxima-
tely two minutes.(See A-83 and A-84)


VIII.  DENTISTS HAVE REFUSED TO TREAT PLAINTIFF'S DENTAL PROBLEMS

In the present case, plaintiff reqpectfully requests this
Honorable Court to notice the following facts:

(a)  Since, plaintiff has left NYC, on June 1979, the
New York Jewish Physician have interferred in the fabrication
of plaintiff's bridge# 3,4,5. ( See A-77)

14

(b)  On May 24, 1999, Delaware State Dental Society and Dr. Ralston, DDS, have refused to do a Peer Review regarding the dental work done by Dr. Bahar. (See A-78)

(c)  On July 27, 1999, Dr. Bond, DDS, after examining plaintiff's oral cavity and mouth, Dr. Bond refused to put in writing the dental findings. (See A-79)

(d)  On July 28, 1999, Dr. Mazoch, DDS, refused to write the report about the diagnostic impression taken on plaintiff's mouth. (See A-80) [6]

(e)  On December 27, 2000, Dr. Chialastri, DMD, informed plaintiff that she will not treat plaintiff for teeth cleaning which was scheduled by her on January 10, 2001, at 12:00 pm. (See A-81)

(f)  On November 28, 2000, Dr. Webster, DDS, refused to do a simple cleaning, scaling and root planning, of plaintiff's teeth. When, plaintiff arrived at Dr. Webster's office , Dr. Webster told that:"He(Dr. Webster) is not going to render any kind of treatment to plaintiff." (See A-81)

---

[6]  Dr. Mazoch's letter dated on August 10, 1999, states that:"I do not wish to treat you as a patient and would appreciate no further contact."(See A-80)

[7]  Dr. Webster extracted plaintiff's tooth#23, on or about early fall of 2000. Plaintiff paid Dr. Webster fee for extraction by the NHC card which was issued on 9-30-2000(Clinic card No.: 269380)
Dr. Webster was willing to redone all the prosthesis fabricated by Dr. Bahar, but Dr. Webster changed his mind after having received plaintiff's beloved mther medical record which does indicate beyond any doubt the murder of plaintiff's beloved mother.

(g)  On March 5, 2001, at 12:00 pm, plaintiff had an appoint-
ment with Dr. Jester,DDS, for oral examination and teeth cleaning.
Plaintiff arrived half an hour earlier than his appointment schedu-
led . After, having to wait one hour in Dr. Jester's office, Dr.
Jester at 1:00 o'clock, told plaintiff that :"He(Dr. Jester) is not
going to perform a preliminary examination on plaintiff's mouth,and,
also, that he is not going to perform a simple cleaning of plaintiff's
mouth and teeth."(See A-81)

(h)On April 6, 2001, Patricia M. Duca, of the Nemours Health
clinic, informed plaintiff in writing, that the clinic will not
render dental treatment to plaintiff. See A-82)

At this momoment, plaintiff introduces the waiting period
for the dnental service from the day you become a new Nemours me
member is 4-6 months(See A-6)

Plaintiff has asked numerous times from the Milford Clinic
and spoke to the manager about the waiting period, whose answer
is that : "She (managerof Milford Branch) does not know what is
happening to plaintiff's case."

Further, plaintiff has t requested , with no success, from
the Miford Clinic about the "automatically be mailed a packet shortly
after enrollment that includes the dnetal provider list for those who choose
to receive dental care through the Outreach Program. (See A-4)

The above decisions  of the defendants indicate the arbitrary and
unresasonable action by the NHC and its Officers Perry and Duca, a departure

16

from the normal procedural sequence also might afford evidence
that improper purposes are playing a role. Substantive departures
too may be relevant particularly if the factors usually considered
important by the decisionmaker strongly favor a decision contrary
to the one reached. See Arlington Heights v. Metro Housing Corp.
429 US 252, 50 L Ed 2d 450, 466, 97 S Ct 555.

i)    On 2002, Dr. Michael J. Ryan,DDS, case pending in Superior
Court of Delaware, Case No.: 03C-12-038(RBY);

j)    On 2003, Dr. Anthony W. Vattilana,DDS, case pending in the
Supreme Court of Delaware, Case No.: 354,2005.

k)    On 2004, Dr. Linda Nguyen, DDS, case pending in the Supreme
Court of Delaware, Case No.: 595,2005;

l)    On 2004, Dr. James J. Gentile, DDS, the dentist's secretary,
Ms. Shelly, stated: " That we will not tolerate Plaintiff's antisemi-
tism."

m)    On 2005, refusal to treat Plaintiff's dental urgent need
of dental care by DrMichael W. Martin , DDS and Dr. Christopher
Burns, DDS.

n)    Also, the most important is the malicious work done by DR.
Arezoo A. Bahar, DDS on Plaintiff's dentition, from 1998 to 1999.

On October 11, 2004, Dr. Christensen Affidavit (A-93 and A-94),
it is  about the two x-rays taken by Dr.Bahar. Exhibit A,
taken on 11/24/98(A-95) and Exhibit B, taken on 12/.16/98, after
three weeks(A-95).

17

On October 11, 2004, Dr. Gordon J. Christensen's Affidavit, states(A-93):

> "Assuming that Exhibit A was taken on 11/24/98 and exhibit B only three weeks later, it is very peculiar that there is significant and gross tooth destruction on exhibit B ...........If this in fact occured only three weeks it would be a major undescribable phenomenon...
>
> ...'however it is very peculiar situation that I have not seen before in 45 years."

As the Affidavit of Dr. Christensen states that it is very peculiar to have gross tooth destruction in three weeks, it would be a major undescribable phenomenon.  The only way to explain this peculiar phenomenon , it is done by the intentional, willfull and purposeful act of Dr. Bahar by injuring and destroying the cementum and the periodontal ligament.

WHEREFORE, Debtor prays the following relief:

a. the Debtor asks this Court to enter an Order declaring the student loan debt to be dischargeable.

b. to designate a Christian Master to find out why the debtor has not been able to earn an income since 1982, even though possesses 10 advanced degrees;

c. to find out the murder of the beloved mother of Debtor which is nicely covered up by the jewish physicians;

d.  to have discovery and documentary evidence that since 1979, because of jewish conspiracy Debtors dental conditions are not treatedand Debtor needlessly spending money on sham and make-believe treatment by the dentists.

Respectfully submitted,

Gabriel G. Atamian, MD, MSEE, JD
1021 N. State Street Apt A
Dover, DE 19901
302-678-2546
Debtor. Pro se

June 9, 2006

18

# UNITED STATES BANKRUPTCY COURT
## District of Delaware

IN RE:

**Gabriel G. Atamian MD,MSEE,JD**                    Case No. 05-20040-(MFW)

        Debtor                                   Chapter 7

_____

**Gabriel G. Atamian MD,MSEE,JD**                    Adversary No. 06-50435-(MFW)

        Plaintiff,

## DECLARATION OF CHAD KELLER

## JOB POSITION AND RESPONSIBILITIES

1.     I am a Supervisory Program and Management Analyst in the Litigation Support Branch, San Francisco Service Center, Processing Group, Federal Student Aid, U.S. Department of Education (Education). I have held this position since October 2005.

2.     My responsibilities are to assist United States Attorneys Offices with both Federal District Court and Bankruptcy Court litigation involving student loans. The litigation support provided includes, but is not limited to, the following: (1) providing background information on the individual's loan history (including repayment history and forbearance/deferment history) and loan programs; (2) preparing responses to discovery requests, and especially providing responses to interrogatories and requests for production of documents; (3) providing information regarding repayment options available to the borrower; (4) providing testimony to the actual case either in person or by submission of a declaration/affidavit; and (5) facilitating settlement.

**Attachment B**

3.    In order to fulfill my responsibilities, I have access to Education's Debt Management and

Collection System (DMCS), a database commonly known within Education as "E-Systems," and

which contains pertinent information on student loan accounts held by Education.

4.    On December 29, 2006, Education conceded that Plaintiff met the standards for hardship

discharge and administratively discharged the loans in Plaintiff's student loan account with

Education.  Plaintiff's account has been closed on Education's system of records and he has no

balances or payments due.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing

statements true and correct.

Executed: February 6, 2007

Chad Keller
Supervisory Program & Management Analyst

Page: 1 Document Name: untitled

( L101 )                    ACCOUNT LEVEL INFORMATION          ED0703        02/06/07
                    REGION: 04  ACCT OWNER: ED107  COLL NUM:                  09:38

   ACCT NO: S099325733              ED SSN VERIFICATION CODE:
   ACCT NAME: ATAMIAN                        , GABRIEL            G
     ADDRESS: 1021 N STATE ST APT A

      CITY: DOVER                         STATE: DE      ZIP: 19901-3904
   BIRTHDATE: 08/22/35      DAY PHONE:             NIGHT PHONE: (302)678-2546
   PREV LAST:                         PREV FIRST:

   ED BALANCE:        $.00      PRINCIPAL:        $.00      INTEREST:          $.00
   PENALTY AMT:       $.00          ADMIN:        $.00          FEES:          $.00
                           PROJ/ACT CA:       $0.00    CA BALANCE:        $0.00

   MONTHLY PMT:       $.00   PAST DUE AMT:      $0.00     TOTAL DUE:        $0.00
   LAST PMT DATE:            LAST PMT AMT:      $0.00     DUE DATE:
   DATE BOUN/RV :           LAST PMT BOUN/RV:     .00   TOP STAT: 07 2
                           DDP:                          ICRP:
   NUMBER AND TYPE OF DEBTS:    NDSL      GSL
                               _  1      _  4
   POSITION CURSOR TO SELECT INDIVIDUAL TYPE(S) OF DEBT(S) AND PRESS ENTER

PF13-L101 14-L102 15-L103 16-L104 17-L105 18-L106 19-L107 20-L108 21-L109

**Attachment C**

FEB-06-2007 11:57    US DEPT ED OGC    202 401 5391    P.003

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re                                      :
                                           :
Gabriel G. Atamian MD,MSEE,JD,             :        Case No. 05-20040 (MFW)
                                           :
                Debtor.                    :
                                           :
_____    :

Gabriel G. Atamian MD,MSEE,JD,             :
                                           :
                Plaintiff,                 :
                                           :
    v.                                     :        Adv. Pro. No. 06-50435 (MFW)
                                           :
U.S. Department of Education, and          :
Secretary of U.S. Department of Education, :
and Signet Bank,                           :
                                           :
                Defendants.                :


### <u>O R D E R</u>


**AND NOW**, this _____ day of _____, 2007, upon consideration of the

Motion by the United States for Summary Judgment and Memorandum in Support Thereof,

**IT IS HEREBY ORDERED** that the Motion is GRANTED.



_____
Honorable Mary F. Walrath
United States Bankruptcy Judge

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                )

Gabriel G. Atamian,MD,MSEE,JD         )    Chapter 7
                                      )
    Debtor.                           )    Case No.  05-20040 MFW
                                      )
————————————————————————————————————  )
                                      )
    Plaintiff,                        )
                                      )    Adv. Proc. No.  06-50435-MFW
v.                                    )
U.S. Department of Education; and
Secretary of U.S. Department of Education; )
Johns Hopkins University;             )
Signet Bank                           )
                                      )
    Defendants                        )


OBJECTION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW debtor Gabriel G. Atamian,MD,MSEE,JD, do hereby

move  this Court to object to the defendant's summary judgment; and,

in support of his objections , states:


A.   PROCEDURAL DEFICIT IN DEFENDANT'S MOTION FORSUMMARY JUDGMENT

Invoking Rule 9014, Contested Matters  , states:

> " Rule 9014(a): ... motion ... an opportunity
>                 for the hearing should be afforded..."

> Rule 9014(c) Application of Part VII Rules:
>                 ... the following rules should apply..
>                 7054-7056......."

Invoking rule 7056. Summary Judgment, states:

> " Rule 7056 :   Rule FRCP 56 applies in adversary
>                 proceedings.

> Rule 56(c): .... motion shall be served before
>                 at least 10 days before the time fixed
>                 for the hearing.

2. From the above foregoings, it is clear that a motion under Rule 7056 does require hearing, and the hearing time and date should be noticed in the caption of the motion for summary judgment.

Unfortunately, there is no date and time given by the counsel of the defendant, DOE. The counsel being a bar member should comply with the rules and regulations of bankruptcy rules; otherwise, the counsel does violate Rule 11 for Sanctions.

### FACTS ANG LEGAL ISSUES

3. Debtor borrowed money in order to be able to earn his electrical engineering which would have enable him to earn an income.

4. Debtor was able to earn BS in Computer Sciences in 1986; and, MSEE in Electrical Engineering in 1989; and, MS in Applied Physics in 1990.

5. After, becoming an Electrical Engineer by 1990, debtor was not able to find a job in engineering or biomedical engineering, meaning combining his medical degree(Knowledge) with the electrical aengineering. Needless to say, debtor has further gone to study for three years in the American College of Cardiology , for the diseases and treatment of heart conditions.

6. Debtor has described clearly   that he was not able to earn an income since 1982, even though debtor has procured 10 advanced degrees including psychiatry with Honors, in 1983.

7. Debtor respectfully request this Court should refer this case of illegal wrong doing, meaning the conspiracy by the jewish physicians , to the proper authorities for investigation; because the conspiracy has prevented debtor not to earn a living and thus preventing to pay his student loan; and, thus being here in the bankruptcy

Court, today.

8.   Para. 7, supra, does indeed qualify this case to arise under or in Bankruptcy case (Core) and/or qualify that it is related to the Bankruptcy case(Non core) ; where, the Jurisdiction of the Bankruptcy Court is deliniated by Congress , Article III.

WHEREFORE, debtor pray this Court which has nothing to do with its Jurisdiction to report and notify the proper authorities of the Department of Justice for investigation in the conspiracy ; or, in the alternative, to Order the Assistant United States Attorney, Ms. Ellen W. Slights, that Ms. Slights should inform the Justice Department to investigate the conspiracy against debtor which has prevented debtor to earn an income and not to be able to pay his student loan.

Respectfully submitted,

*Gabriel G. Atamian, MD, MSEE, JD*

Gabriel G. Atamian,MD,MSEE,JD
1021 N. State Street Apt A
Dover, DE 19901
302-678-2546
Debtor. Pro se

February 12, 2006

3.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          :
                                                :
Gabriel G. Atamian MD,MSEE,JD,                  :     Case No. 05-20040 (MFW)
                                                :
            Debtor.                             :
                                                :
-------------------------------------------------
                                                :
Gabriel G. Atamian MD,MSEE,JD,                  :
                                                :
            Plaintiff,                          :
                                                :
    v.                                          :     Adv. Proc. No. 06-50435 (MFW)
                                                :
U.S. Department of Education, and               :
Secretary of U.S. Department of Education,      :
and Signet Bank,                                :
                                                :
            Defendants.                         :
                                                :

## REPLY TO DEBTOR'S OBJECTION TO THE
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The United States, on behalf of its Department of Education and the Secretary of

Education (collectively, "DOE"), by and through the undersigned attorneys, in support of its

reply to Debtor's Objection to the Defendant's Motion for Summary Judgment ("Objection"),

avers as follows:

1.  On February 9, 2007, the United States filed a Motion for Summary Judgment

("Motion") in the above-captioned adversary proceeding.

2.  On February 12, 2007, the Plaintiff filed the Objection. The United States assumes

that the Objection is the Plaintiff's answering brief.

3.  In Paragraphs A and 2 of his Objection, the Plaintiff alleges that there is a procedural deficit in the Motion because no hearing date was set by the DOE.  Contrary to Plaintiff's assertions, the DOE was complying with Local Rule of Bankruptcy Procedure 7007-3 which states that no hearing will be scheduled on non-discovery related motions filed in adversary proceedings unless ordered by the Court.

4.  The DOE relies on the authority in its Motion to address the Plaintiff's contentions as set forth in Paragraphs 3 through 8 of the Objection.

5.  The DOE objects the improper relief the Plaintiff seeks in the prayer clause of the Objection.

WHEREFORE, the United States respectfully requests that the Court deny the relief the Plaintiff seeks in his Objection and grant the United States' Motion for Summary Judgment.

COLM F. CONNOLLY
United States Attorney

BY: _____
Ellen W. Slights
Assistant United States Attorney
Delaware State Bar No. 2782
1007 Orange Street
Wilmington, DE  19899-2046

Dated:   February 16, 2007

4.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

FILED

2007 FEB 27 PM 2:43

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                              )

Gabriel G. Atamian,MD,MSEE,JD       )    Chapter 7

                                    )    Case No.  05-20040 MFW
     Debtor.                        )

                                    )

——————————————————————              )

     Plaintiff,                     )

                                    )    Adv. Proc. No.  06-50435-MFW
.v.                                 )
U.S. Department of Education; and
Secretary of U.S. Department of Education;   ) Judge: The Honorable Mary F Walrath
Johns Hopkins University;
Signet Bank                         )

                                         Hearing date:  March 21, 2007
     Defendants                                        at 2:00 pm


MOTION FOR THE NEED OF REFERRAL OF THIS CASE TO THE
UNITED STATES JUSTICE DEPARTMENT FOR INVESTIGATION

COMES NOW plaintiff Gabriel G. Atamian,MD,MSEE,JD, and hereby moves

the Court for the need of referral of this case to the Justice De-

partment of the United States for the investigation of the cons-

racy which has prevented Debtor to earn money since 1982; and, in

support of his motion states:


1.    Jewish conspiracy from NYC , since 1965, has ruined plaintiff's

entire life. Plaintiff has nowife, no children, no job, no money,

no savings; in other words, plaintiff has absolutely anything

except 10 advanced degrees including psychiatry diploma with honors.

2.    It is essential for the Assistant United States Attorney,

from hereon ("Attorney"), to find out what did happen to plaintiff

that he was literaly on the death row for $7\frac{1}{2}$ years , because jewish

conspiracy made a fictitious diagnosis of Lou Gueric disease which

is invariably fatal in couple years, on plaintiff on 1971.


1.

3.   It is the duty and the obligation of the ("Attorney"), to investigate this case or to refer to the proper authorities in the Justice Department to investigate why plaintiff has not been able to earn an income since 1982. (See Exhibit O, p.7)

4.   It is the duty and obligation of the ("Attorney") to find out why plaintiff surrender his medical licensure to the State of Virginia, in 1985. Couple days after the surrender of the license, plaintiff  on the telephone with Licensing Department of the State of New York, where the State of New York stated: " Plaintiff has a license to practice medicine for life in New York."
(See Exhibit O, pp.5-6)

5.   It is the duty and the obligation of the ("Attorney"), to investigate why plaintiff was not able to find a job in Electrical Engineering, in 1990.

6.   It is the duty and obligation of the ("Attorney") to investigate or refer to the proper authorities in the Justice Depar- ment to find that on June 1, 1987, plaintiff's beloved mother was murdered at Washington Adventist Hospital , by a jewish physician by prescribing medications in such doses that it would be fatal to any person.

7.   It is the duty and obligation of the ("Attorney") to find out that Dr. Gorkin, a jewish physician, has labelled plaintiff a psychopath.

8.   It is the duty and obligation of the ("attorney") to find out why dentists have refused to treat plaintiff's urgent and needy dental problems.

9.    Since 1996, all the dentists have refused to treat the urgent need of Debtor's dental problems and conditions.

The debtor is suffering from swollen gums and absess of tooth#29, it is very difficult for the Debtor to chew food, and it is painfull.

Finally, the Debtor is stating Dr. Christensen evaluation of two x-rays of the Debtor (see Exhibit O, pp 1-4):

> "If this in fact occured in only three weeks it would be a major undescribable phenomenon."
>
> ....
>
> "... however it is a very peculiar situation that I have not seen before in 45 years."

The only way to explain the above x-rays findings ; one should believe that it is due to the malicious conduct of Dr. Bahar, who on 11/24/98 purposely, willfully and knowingly has destroyed the base of tooth# 5 which has brought about the resorption in 3 weeks duration. That is why Dr. Christensen states:" a major undescribable phenomenon.... that he has not seen before in 45 years."    Then and only then the phenomenon which is undes-cribable becomes clear and can be described when Dr. Bahar with malicious conduct has willfully destroyed tooth#5 and has brought about the undescribable condition.

10.    Debtor respectfully request this Court should refer this case of illegal wrongdoing, meaning the conspiracy by the jewish physicians to the proper authorities for investigation; because the conspiracy has prevented debtor not to earn a living and thus preventing to pay his student loan; and, therefore being here in the bankruptcy Court, today.

3

11.   Para. 10, supra, does indeed renders this case to qualify that  that the case did arise under /or in Bankruptcy case (Core) and also qualify that it is related to the Bankruptcy case (Non-Core); where, the jurisdiction of the bankruptcy Court is deliniated by Congress, Article III.


    WHEREFORE, debtor pray this Court which has nothing to do with its Jurisdiction to report and notify the proper authorities of the Department of Justice for investigation in the conspiracy ; or, in the alternative, to Order the Assistant United States Attorney, Ms. Ellen W. Slights, that Ms. Slights should inform the Justice Department to investigate the conspiracy against debtor which has prevented debtor to earn an income and not to be able to pay his student loan.

                                        Respectfully submitted,

                                        Gabriel G. Atamian, MD, MSE

                                        Gabriel G. Atamian, MD, MSEE, JD     Jr
                                        1021 N. State Street Apt A
                                        Dover, DE 19901
                                        302-678-2546
                                        Debtor. Pro se

February 27, 2007

4

PROOF OF SERVICE

I, Gabriel G. Atamian, do hereby certify that a copy of the Motion for the Need of Referral of this Case to the United States Justice Department for Investigation, was served on February 27, 2007, postage prepaid, first class mail, on:

Ellen W. Slights
Assistant United States Attorney                (Also, via Hand Delivery)
1007 Orange Street, Suite 700
Wilmington, DE 19899-2046


Thomas G. Whalen, Esq.
Stevens & Lee, PC
1105 North Market Street , 7th Floor
Wilmington, DE 19801


George L. Miller, Trustee
1628 JFK Blvd.
Suite 950
Philadelphia, PA 19103


Under penal ty of perjury, I declare that the foregoing is true and correct.


Gabriel G. Atamian, MD, MSEE, JD

February 27, 2007.

Exhibit O



**Gordon J. Christensen**

October 11, 2004

GABRIEL G ATAMIAN MD
1021 NORTH STATE ST APT A
DOVER DE 19901

Dear Dr. Atamian,

Thank you for your request for information. I have observed both of your radiographic images.

Assuming that exhibit A was taken on 11/24/98 and exhibit B only three weeks later, it is very peculiar that there is significant and gross tooth destruction on exhibit B. Exhibit B almost appears as though it has resorption growing on the tooth structure. If this is the case it is much like the resorption of a primary [baby] tooth during its exfoliation. If this in fact occurred in only three weeks it would be a major undescribable phenomenon. Usually such resorption would require many months.

The only other possibility I can see is that the dentist has cemented the posts in exhibit B with a radiolucent cement or build-up material, which is unlikely but possible. In such case the radiograph would not show the build-up material or cement. However, that does not explain the mottled appearance of the tooth root and the widened periodontal ligament.

If you had not given me dates on the two images I would state that exhibit B must have been months later than exhibit A, since there is evidence of bone changes and tooth structure changes. If in fact the tooth with the post in it in exhibit B has this small amount of tooth structure remaining, there is no alternative but to extract it and place an implant, or a fixed bridge between the adjacent tooth to the affected tooth and the most posterior tooth.

I'm sorry not to be able to explain this phenomena better, however it is a very peculiar situation that I have not seen before in 45 years. I wish you success in your oral rehabilitation.

Director
Gordon J. Christensen, DDS, MSD, PhD
3707 North Canyon Road, 3D • Provo, Utah 84604 • (801) 226-6569

Exh. O
(p. 1 of 7)

Sincerely,

Gordon J. Christensen, DDS, MSD, PhD

GJC/al

Exh. ①
(p. 2 of 7)



Exhibit A , taken on 11/24/98.



Exhibit B, taken on 12/16/98.
  • Mottled·
  - Pointed Apex.

Exh O
(p. 3 of 7)



Exhibit C
Ex L O
1 p. 48 71



# The State Of New York

### The Office of Mental Health

Certifies that

## Daniel Altamian, M.D.

has successfully completed a Program for Resident Physicians in Psychiatric Training and has satisfactorily performed the duties of Resident Psychiatric (including Neurology) at the

### Manhattan Psychiatric Center

affiliated with the College of Physicians & Surgeons of Columbia University and New York University Medical Center from July 1, 1976 to June 30, 1979

In Witness Whereof we have set our hand & Seal this 12 day of Sept. 1983

Kenneth P. Kalmes, M.D.
DIRECTOR OF RESIDENT PHYSICIANS' TRAINING

COMMISSIONER OF MENTAL HEALTH



Exh. 0
Tp. 5 of



**NEW YORK STATE
OFFICE OF MENTAL HEALTH**

**MANHATTAN PSYCHIATRIC CENTER**
MICHAEL FORD, M.D., Executive Director

WILLIAM MORRIS, M.D., Acting Commissioner

January 24, 1984

Gabriel G. Atamian, M.A., M.D.
6305 Castle Place - #3D
Falls Church, VA  22044

Dear Dr. Atamian:

Your name handwritten on your diploma is a special honor

accorded to very special residents.  I am glad you are proud of

it.

Cordially,

Edward J. Hornick, M.D.
Chief of Psychiatry

EJH:lrb

ExR. O
(p. 6 of 7)

| YR | EARNINGS | QC | YR | EARNINGS | QC | YR | EARNINGS | QC | YR | EARNINGS |
|----|----------|------|----|----------|------|----|----------|------|----|----------|
| 57 | 625.97 | NCCN | 73 | 14446.70 | CCCC | 89 | 2875.00 | CCCC | | |
| 58 | 601.49 | NCCN | 74 | 10432.15 | CCCS | 90 | 0.00 | NNNN | | |
| 59 | 330.13 | NCNC | 75 | 10152.00 | SSSS | 91 | 0.00 | NNNN | | |
| 60 | 600.00 | NNCN | 76 | 15153.00 | SSSS | 92 | 0.00 | NNNN | | |
| 61 | 0.00 | NNNN | 77 | 16500.85 | SSCC | 93 | 0.00 | NNNN | | |
| 62 | 0.00 | NNNN | 78 | 17700.00 | CCCC | 94 | 0.00 | NNNN | | |
| 63 | 0.00 | NNNN | 79 | 10996.13 | CCCC | 95 | 0.00 | NNNN | | |
| 64 | 0.00 | NNNN | 80 | 12639.39 | CCCC | 96 | 0.00 | NNNN | | |
| 65 | 0.00 | NNNN | 81 | 19800.00 | CCCC | 97 | 0.00 | NNNN | | |
| 66 | 0.00 | NNNN | 82 | 1392.00 | CCCC | 98 | 0.00 | NNNN | | |
| 67 | 6600.00 | SSSS | 83 | 0.00 | NNNN | 99 | 0.00 | NNNN | | |
| 68 | 7800.50 | SSSC | 84 | 0.00 | NNNN | | | | | |
| 69 | 5068.75 | CCNN | 85 | 0.00 | NNNN | | | | | |
| 70 | 0.00 | NNNN | 86 | 125.00 | NNNN | | | | | |
| 71 | 6366.35 | NNCC | 87 | 0.00 | NNNN | | | | | |
| 72 | 13069.15 | CCCC | 88 | 0.00 | NNNN | | | | | |

MAKE ANY EARNINGS AND QC CHANGES             ADDITIONAL SCREEN NEEDED (Y)

Exh. O
(p.7 of 7)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re                                    :

Gabriel G. Atamian MD,MSEE,JD,           :        Case No. 05-20040 (MFW)

      Debtor.                      :

_____        :

Gabriel G. Atamian MD,MSEE,JD,           :

      Plaintiff,                   :

v.                                       :        Adv. Pro. No. 06-50435 (MFW)

U.S. Department of Education, and        :
Secretary of U.S. Department of Education, :
and Signet Bank,                         :

      Defendants.                  :


## OBJECTION TO PLAINTIFF'S MOTION FOR THE NEED OF REFERRAL OF THIS CASE TO THE UNITED STATES JUSTICE DEPARTMENT FOR INVESTIGATION AND OBJECTION TO DEBTOR SETTING A HEARING IN VIOLATION OF LOCAL RULES

The United States, on behalf of its Department of Education ("DOE"), objects to the

relief sought in the Motion for the Need of Referral of this Case to the United States Justice

Department for Investigation ("Motion") because this Court does not have jurisdiction to grant

the relief sought in the Motion and the Debtor has failed to cite any legal authority in support of

the Motion.

The DOE further objects to the Debtor setting a hearing on the Motion in violation of

Del. Bankr. L.R. 7007-3.

WHEREFORE, the United States respectfully requests that the Court deny the Motion.

COLM F. CONNOLLY
United States Attorney

BY: _____
Ellen W. Slights
Assistant United States Attorney
Delaware State Bar No. 2782
1007 Orange Street, Suite 700
Wilmington, DE 19899-2046

March 6, 2007

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| GABRIEL G. ATAMIAN, MD, MSEE, JD, | ) | Case No. 00-05-20040 (MFW) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| GABRIEL G. ATAMIAN, MD, MSEE, JD, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. A-06-50435 |
| | ) | (MFW) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION, SECRETARY OF U.S. DEPARTMENT OF EDUCATION, and SIGNET BANK, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OPINION[1]

Before the Court is the Motion of the United States Department of Education (the "DOE") seeking summary judgment in its favor on the Complaint filed against it by Gabriel G. Atamian, MD, MSEE, JD (the "Debtor"). For the reasons discussed below, the Court will grant the Motion.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

I.    BACKGROUND

In 1986, 1988, and 1989, the Debtor executed promissory notes to secure education loans (collectively, the "USA Loans") totaling $22,500.  The USA Loans were guaranteed by USA FUNDS and reinsured by the DOE under a statutorily authorized guaranty program.  On October 14, 2004, the USA Loans were assigned to the DOE.

On February 7, 1990, the Debtor executed another promissory note to secure a $3,000 loan ("Perkins Loan") from Johns Hopkins University.  On August 25, 1995, the Perkins Loan was assigned to the DOE.  (The Perkins Loan and the USA Loans are collectively referred to as the "Education Loans.")

On November 15, 2005, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  On January 20, 2006, the Debtor filed a complaint (the "Complaint") against National Payment Center, Johns Hopkins University, and Signet Bank.  The Complaint was later amended to add the DOE as a party. The Complaint seeks (1) a determination that the Education Loans are dischargeable (the "dischargeability claim") and (2) an investigation into an alleged conspiracy by the Jewish community (a) to prevent the Debtor from earning an income since 1982, (b) to cover up the alleged murder of the Debtor's mother, and (c) to mistreat the Debtor's dental conditions since 1979 (collectively, the "Residual Claims").

On December 29, 2006, the DOE determined that the Education Loans were dischargeable pursuant to section 523(a)(8) of the Bankruptcy Code and effected an administrative discharge of the Education Loans.  On February 9, 2007, the DOE filed a Motion for summary judgment on the Complaint against it.  The Debtor opposes the Motion.  All briefing on the Motion is complete.  The matter is now ripe for decision.


II.  JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding.  28 U.S.C. §§ 1334(b) & 157(b)(1).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) & (I).


III. DISCUSSION

A.  Standard of Review

Summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of establishing no genuine issue of material fact exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986).  Facts that may alter a suit's outcome are "material."  Anderson v.

3

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Horowitz v. Fed.
Kemper Life Assurance Co., 57 F.3d. 300, 302 n.1 (3d Cir. 1995).
The Court views all facts and draws all reasonable inferences "in
the light most favorable" to the non-moving party.  Pa. Coal
Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  "[T]he
nonmoving party must come forward with 'specific facts showing
that there is a genuine issue for trial'."  Matsushita, 475 U.S.
at 587 (emphasis in original).  "Where the record taken as a
whole could not lead a rational trier of fact to find for the
non-moving party, there is no 'genuine issue for trial'."  Id.

B.    DOE's Motion for Summary Judgment

The DOE moves for summary judgment because there is no
genuine issue of material fact: the DOE agreed to the Debtor's
requested discharge of debt, and the Court does not have
jurisdiction over the Residual Claims.

The Debtor argues initially that the Motion is procedurally
deficient because the DOE failed to set a hearing on the summary
judgment Motion.  The Debtor also asserts that the Court does
have subject matter jurisdiction over the Residual Claims because
the alleged conspiracy caused the Debtor to be unable to repay
the Education Loans.  Lastly, the Debtor requests that the Court
refer the case to the United States Department of Justice for
investigation of the Residual Claims.

4

1.  <u>Requirement of a Hearing on the Motion</u>

The Debtor argues that he has a right to a hearing on the Motion pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.  Fed. R. Bankr. P. 9014 (a),(c).

The Court does not agree.  Rule 9014 does not require a hearing, only an opportunity for a hearing.  <u>See, e.g.</u>, <u>First Republicbank Dallas v. Gargyle Corp.</u>, 91 B.R. 398, 401 (N.D. Tex. 1988) ("Rule 9014 . . . provides that 'reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought' [and] 'after notice and a hearing' does not require a hearing in the absence of a request therefor . . . ."); 11 U.S.C. § 102 (1) (defining the meaning of the phrase "after notice and a hearing, or a similar phrase" and providing that the Code authorizes an act absent a hearing if a hearing is not timely requested by a party in interest).  Further, Rule 9014 does not apply to adversary proceedings, and none of the adversary rules (Rule 7001 et seq.) of the Federal Rules of Bankruptcy Procedure requires a hearing on a Motion.

The Local Rules for this District expressly provide that a hearing on a motion such as this one does not require a hearing. The Local Rules provide in this regard:

> <u>No hearing will be scheduled on motions filed in adversary proceedings, unless the Court orders otherwise</u>, except for discovery-related motions which shall be governed by Local Rule 9006-1(b). An application to the Court for oral argument on a motion shall be in writing and shall be filed with the Court

5

and served on counsel for all parties in the proceeding no later than three (3) days after service of the reply brief.[2] <u>An application for oral argument may be granted or denied at the discretion of the Court</u>.

Local Rule of Bankruptcy Procedure 7007-3 (emphasis added).

The Court has not ordered a hearing on this Motion. Accordingly, the Court concludes that there was no procedural error on the part of the DOE and no hearing was required.

2. <u>Jurisdiction over Residual Claims</u>

The Court has jurisdiction over all cases arising under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 157. A bankruptcy court can generally hear and determine matters "under," "arising under," "arising in," or "related to" a case under the Bankruptcy Code. <u>Id.</u> <u>See also</u> <u>Stoe v. Flaherty</u>, 436 F.3d 209, 216 (3d Cir. 2006).

a. <u>"Under" Jurisdiction</u>

"Under" jurisdiction refers to the bankruptcy petition itself. <u>Stoe</u>, 436 F.3d at 216. The Residual Claims are not part of the Debtor's bankruptcy petition. Thus, they are not claims which fall "under" the Bankruptcy Code. Accordingly, the Court concludes that it has no "under" subject matter jurisdiction over the Residual Claims.

b. <u>"Arising Under" Jurisdiction</u>

A case "arising under" the Bankruptcy Code is one that

---

[2] The Debtor did not request oral argument within the time provided by the Local Rules.

"invokes a substantive right" created by the Bankruptcy Code. Stoe, 436 F.3d at 216. The Bankruptcy Code does not provide the Debtor with the right to seek an investigation by the Court or the Department of Justice into the death of the Debtor's mother or an alleged conspiracy to prevent the Debtor's employment or to mistreat the Debtor's dental conditions. Accordingly, the Court concludes that the Debtor's requested relief does not fall under the category of "arising under" jurisdiction.

        c.    "Arising in" Jurisdiction

Cases "arising in" a bankruptcy case "include . . . such things as administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens." Stoe, 436 F.3d at 216 (internal quotations and citation omitted). Generally, a proceeding will "arise in" a bankruptcy case if it has no existence outside the bankruptcy case. Id. Moreover, proceedings that arise in a bankruptcy case are core matters. 28 U.S.C. § 157(b)(2).

The alleged murder of one's mother and a conspiracy to prevent employment or treatment of dental problems are matters that exist and are usually resolved in the absence of a bankruptcy case. Accordingly, the Court concludes that the Residual Claims do not "arise in" the Debtor's bankruptcy case.

        d.    "Related to" Jurisdiction

The Court only has "related to" jurisdiction over an issue

7

that may affect the administration of the Debtor's bankruptcy estate. Stoe, 436 F.3d at 216. See, e.g., In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002) (explaining that "whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit."); Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), overruled on other grounds by, Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995) ("An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.").

The Residual Claims seeking an investigation into the death of the Debtor's mother and the Debtor's employment and dental treatment are not related to the Debtor's bankruptcy case because they do not affect the outcome of the Debtor's discharge or administration of the bankruptcy estate. See, e.g., Stoe, 436 F.3d at 216; Federal-Mogul Global, 300 F.3d at 382; Pacor, 743 F.2d at 994. Accordingly, the Court concludes that it does not have "related to" subject matter jurisdiction over the Residual Claims.

The discharge of the Debtor's Educational Loans eliminated the only claim against the DOE over which the Court had

8

jurisdiction.  The Residual Claims do not involve the DOE or the bankruptcy estate.  Further, the DOE has agreed with the Debtor that he is entitled to a discharge based on a finding of undue hardship.  Therefore, it is not necessary that the Court determine the causes of the Debtor's undue hardship (i.e., the alleged conspiracy).  See, e.g., DeFunis v. Odegaard, 416 U.S. 312, 315-20 (1974) (dismissing as moot a suit brought by plaintiff against law school for unconstitutional failure to admit him because the state court granted his requested relief and he was admitted and attending the school).  Accordingly, because the Educational Loans were discharged by the DOE (as requested by the Debtor), the Debtor no longer has any claim against the DOE in this adversary proceeding.

3.   Referral of Residual Claims

The Debtor asks the Court to refer the Residual Claims to the Department of Justice for investigation.  The Court cannot grant the Debtor's requested relief.  The Debtor has cited no authority and the Court cannot find any such authority that gives the United States Department of Justice the power to investigate such allegations of conspiracy.  See generally, Act of June 22, 1870, ch. 150, 16 Stat. 162 (1870) (establishing the Department of Justice).  Moreover, the Complaint against the DOE is not the proper tool for bringing a complaint against the Jewish community at-large.  The Jewish community at-large is not a party to this

9

bankruptcy case or adversary proceeding. Consequently, the Court concludes that a referral to the Department of Justice is not an appropriate exercise of the Court's powers under the Bankruptcy Code and other applicable federal law.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that there is no genuine issue as to any material fact that it has no subject matter jurisdiction over the Residual Claims. Consequently, the Court will grant summary judgment in favor of the DOE.

An appropriate Order is attached.


Dated: May 10, 2007                    BY THE COURT:


                                       Mary F. Walrath
                                       United States Bankruptcy Judge


10

7.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| GABRIEL G. ATAMIAN, MD, MSEE, JD, | ) | Case No. 00-05-20040 (MFW) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| GABRIEL G. ATAMIAN, MD, MSEE, JD, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. A-06-50435 |
| | ) | (MFW) |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION, SECRETARY OF U.S. DEPARTMENT OF EDUCATION, and SIGNET BANK, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER

AND NOW, this **10th** day of **May, 2007**, after consideration of the Motion of the United States Department of Education ("DOE") seeking summary judgment in its favor on the complaint of Gabriel G. Atamian, MD, MSEE, JD (the "Debtor") and the opposition of the Debtor thereto, it is hereby,

ORDERED that the Motion of the DOE for summary judgment is **GRANTED**; and it is further

ORDERED that the Educational Loans are **DISCHARGEABLE** pursuant to 11 U.S.C. § 523(a)(8); and it is further

ORDERED that the remainder of the Complaint is **DISMISSED** for lack of subject matter jurisdiction.

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

cc: Ellen Slights, Esquire[1]

---

[1]    Counsel is to serve a copy of this Opinion and Order on all interested parties and file a Certificate of Service with the Court.

SERVICE LIST

Colm F. Connolly, Esquire
Ellen W. Slights, Esquire
Office of the United States Attorney
1007 Orange Street, Suite 700
Wilmington, DE 19899-2046
Counsel for the United States Department of Education

Gabriel Atamian, MD, MSEE, JD
1021 N. State Street
Apartment A
Dover, DE 19901
Pro se Debtor

George L. Miller
1628 JFK Blvd.
Philadelphia, PA 19103
Chapter 7 Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOT THE DISTRICT OF DELAWARE

**FILED**

2007 MAY 21  AM 10: 44

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                                          :

   Gabriel G. Atamian, MD,MSEE,JD               :      Chapter 7
      Debtor,                                    :
                                                 :      Case No.  05-20040-MFW
Last four digits of Social Security             :
No.  5733  5733 gj~                             :
                                                 :
_____         :

Gabriel G. Atamian,MD,MSEE,JD,                   :

      Plaintiff,                                 :

v.                                               :      Adversary No. 06-50435 (MFW)

                                                 :

U.S. Department of Education; and,               :
Secretary of U.S. Department of                  :
Education,and Signet Bank,                        :

      Defendants.                                :

_____         :


NOTICE OF APPEAL

   Gabriel G. Atamian,MD,MSEE,JD, the plaintiff appeals under 28 U.S.C. § 158(b) from the judgment , order, or decree of the bankruptcy judge denying the motion for the need of referral of this case to the United States Justice Department to investigate why the appellant because of jewish conspiracy was not able to earn a living since 1982; and, thus preventing to pay his student loan; and, therefore being in the bankruptcy court , today . That this case arise under/ or in bankruptcy case (core) and also qualify that it is related to the bankruptcy case( non-core); where, the jurisdiction of the bankruptcy court is deliniated by Congress, Article III ; which was entered in this adversary proceedingg on May 10, 2007.

The names of all parties to the judgment , order, or decree appealed from and the names , addresses , and telephone numbers of their respective attorneys are as follows :

Colm F. Connoly, Esquire
Ellen W. Slights, Esquire
Office of the United States Attorney
1007 Orange Street, Suite 700
Wilmington, DE19899-2046
302-573-6277
Counsel for the United States Department of Education

U.S. Department of Education; and Secretary of
U.S. Department of Education
U.S Department of Education
P.O. Box 4169
Greenville,TX 75403-4169
Defendant

Gabriel G. Atamian,MD,MSEE,JD
1021 N. State Street,
Apt. A
Dover, DE 19901
302-678-2546
Pro se Appellant

George L. Miller
1628 JFK Blvd.
Philadelphia, PA 19103
Chapter 7 trustee

Dated: _May 21, 2007_

Signed: _Gabriel G. Atamian, MD, MSEE, JD_
Appellant Pro se

Appellant name; Gabriel G. Atamian,MD,MSEE,JD

Address :    1021 N. State Street, Apt A

Dover, DE 19901

Telephone No.    302-678-2546